HOLLAND & KNIGHT LLP
Daniel P. Kappes (SBN 303454)
Zachary J. Watson (SBN 348019)
560 Mission Street, 19th Floor
San Francisco, CA 94105
Telephone: (415) 743-6900
Facsimile:  (415) 743-6910
E-mail: daniel.kappes@hklaw.com
        zachary.watson@hklaw.com

Attorneys for Growth Cave, LLC and Lucas Lee-Tyson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>GROWTH CAVE, LLC, also d/b/a BUFFALO BRIDGE CAPITAL, LLC and PASSIVEAPPS, a Delaware limited liability company;<br><br>APEX MIND, LLC, a Colorado limited liability company;<br><br>LUCAS LEE-TYSON, individually and as an officer and/or owner of GROWTH CAVE, LLC;<br><br>OSMANY BATTE, aka OZZIE BLESSED, individually and as an officer of GROWTH CAVE, LLC and APEX MIND, LLC; and<br><br>JORDAN MARKSBERRY, individually and as an officer of GROWTH CAVE, LLC and APEX MIND, LLC,<br><br>Defendants. | Case No. 2:25-cv-01115-DOC-RAO<br><br>**DEFENDANTS GROWTH CAVE, LLC'S AND LUCAS LEE-TYSON AND NON-PARTY LLT RESEARCH'S LIMITED OPPOSITION TO PRELIMINARY INJUNCTION**<br><br>Complaint Served: February 27, 2025<br>Stipulated Complaint Response Date: April 18, 2025 |

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

1

**TABLE OF CONTENTS**

2  I.    INTRODUCTION ...................................................................................6

3  II.   FACTUAL BACKGROUND .................................................................7

4  III.  LEGAL STANDARD ............................................................................9

5  IV.   ARGUMENT .......................................................................................10

6     A.   THE FTC CANNOT SUSTAIN ITS BURDEN TO ENJOIN MR. LEE-TYSON FROM CONDUCTING LAWFUL BUSINESS. ................................................... 11

7        1.   The FTC Cannot Demonstrate Likelihood of Success on the Merits That LLT Research Should Be Enjoined From Operating by Freezing
8             Its Assets .................................................................................... 12

9        2.   Excluding LLT Research from the Asset Freeze Will Not Result in Irreparable Harm .......................................................................... 16

10       3.   The Balance of Equities Favors Excluding LLT Research from the Asset Freeze ................................................................................. 17

11       4.   The Public Interest Will Not Be Served by Freezing LLT Research's
12            Assets ........................................................................................... 18

         5.   The FTC's Proposed Injunction Goes Beyond the Permissible Scope .. 19

13    B.   FREEZING LLT RESEARCH'S ACCOUNTS WOULD BE COUNTERPRODUCTIVE TO THE FTC'S CLAIMED GOAL TO REMEDIATE THE
14         ALLEGED HARM BY DEPLETING THE ASSETS AVAILABLE TO FORMER
15         GROWTH CAVE CUSTOMERS. ................................................................... 20

16    C.   THE COURT SHOULD MODIFY THE STIPULATED INJUNCTION ..................... 21

         1.   The interests of the allegedly defrauded consumers ............................. 22

17       2.   Source of the funds to be released ...................................................... 22

18       3.   Balance of interests; and (4) expenses defendant seeks to pay ............. 22

19 V.    CONCLUSION ...................................................................................24

20 CERTIFICATE OF COMPLIANCE .................................................................25

21

22

23

24

25

26

27

28

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

2

1

## **TABLE OF AUTHORITIES**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page(s)**

**Federal Cases**

*Apple, Inc. v. Samsung Electronics Co., Ltd.*
    678 F3d 1314 (Fed. Cir. 2012) .................................................................... 17

*Baird v. Bonta,*
    81 F.4th 1036 (9th Cir. 2023) ..................................................................... 16

*Chase Nat. Bank v. City of Norwalk, Ohio,*
    291 U.S. 431 (1934) ............................................................................. 10, 19

*D.T. v. Sumner County Schools* (6th Cir. 2019)
    942 F3d 324 ................................................................................................ 17

*F.T.C. v. H. N. Singer, Inc.,*
    668 F.2d 1107 (9th Cir. 1982) ............................................................... 21, 22

*Fed. Trade Comm'n v. Telestar Consulting, Inc.,*
    No. CV1600555SJOSSX, 2017 WL 11632797 (C.D. Cal. Mar. 22,
    2017)............................................................................................................ 22

*Freedom Holdings, Inc. v. Spitzer*
    408 F3d 112 (2nd Cir. 2005) ...................................................................... 17

*FTC v. Credit Bureau Ctr., LLC,*
    235 F. Supp. 3d 1054 (N.D. Ill. 2017)........................................................ 19

*FTC v. Vemma Nutrition Co.,*
    2015 U.S. Dist. LEXIS 179855 (D. Ariz. September 18, 2015)...................18

*Johnson v. Couturier,*
    572 F.3d 1067 (9th Cir. 2009) ............................................................... 10, 20

*Mazurek v. Armstrong* (1997)
    520 US 968 .................................................................................................... 9

*Munaf v. Geren,*
    553 U.S. 674 (2008) .................................................................................... 11

*Nutramax Lab'ys, Inc. v. Tovar,*
    No. 5:23-CV-02366-MRA-SP, 2024 WL 3221731 (C.D. Cal. 2024) ...............12

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

3

*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*
  970 F2d 552 (9th Cir. 1992) ................................................................. 20

*Regal Knitwear Co. v. N.L.R.B.*,
  324 U.S. 9 (1945) ...................................................................... *passim*

*S.E.C. v. Duclaud Gonzalez de Castilla*,
  170 F. Supp. 2d 427 (S.D.N.Y. 2001) .............................................. 21

*S.E.C. v. Forte*,
  598 F. Supp. 2d 689 (E.D. Pa. 2009)......................................... 22, 24

*Schrier v. University of Colorado* (10th Cir. 2005)
  427 F3d 1253 ................................................................................... 9

*SEC v. Binance Holdings Ltd.*,
  No. 23-1599, Dkt. 71 (D.D.C. June 17, 2023) ............................... 20

*SEC v. ETS Payphones, Inc.*,
  408 F.3d 727 (11th Cir.2005) ......................................................... 22

*Stanley v. University of Southern Calif.* (9th Cir. 1994)
  13 F3d 1313 ................................................................................... 16

*Starter Corp. v. Converse, Inc.*,
  170 F.3d 286 (2d Cir.1999) ............................................................ 18

*Towery v. Brewer* (9th Cir. 2012)
  672 F3d 650 ..................................................................................... 9

*Waldman Pub. Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994) ....................................................... 16, 18

*Weinberger v. Romero-Barcelo*
  456 US 305 (1982) ......................................................................... 16

*West Point-Pepperell, Inc. v. Donovan* (11th Cir. 1982)
  689 F2d 950 ................................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................. 9, 10, 11, 17

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION      CASE NO.: 2:25-CV-01115

**Federal Statutes**

FRCP 65(d)(2)(C) .................................................................. 10, 11

FTC Act § 5(a) 15 U.S.C. § 45(a) ..................................... 10, 14

**Other Authorities**

Business Opportunity Rule, 16 C.F.R. § 437.1 ................................. 14, 15

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

## I.  <u>INTRODUCTION</u>

This is a limited opposition. The main issue that remains unresolved is whether the Federal Trade Commission may snuff out Mr. Lee-Tyson's independent and lawful business activities—and sole source of income—by broadly applying an asset freeze to a business ***not*** named in the Complaint and not engaged in any ongoing misconduct, in direct violation of the Supreme Court's decision in *Regal Knitwear*. Growth Cave, Mr. Lee-Tyson, and the FTC have stipulated to all other terms of the preliminary injunction.

Mr. Lee-Tyson owns and operates a consulting business that provides marketing and branding services to established businesses, not retail consumers. That non-party company is LLT Research, LLC ("LLT Research"). Importantly, LLT Research is a distinct entity from Growth Cave, the company that—up until July 2024—sold the Knowledge Business Accelerator ("KBA") program, the Digital Freedom Mastermind ("DFM") program, and the Cashflow Consulting Academy ("CCA") and Buffalo Bridge products. The sale of those four products constitute the bulk of the FTC's allegations that Mr. Lee-Tyson and Growth Cave violated the FTC Act, the Business Opportunity Rule, the CROA, and the Reviews and Testimonials Rule. Given Growth Cave long ago ceased operations, sales, marketing, and advertising, the complained of products are no longer sold, Growth Cave does not oppose the requested injunction.

Mr. Lee-Tyson and non-party LLT Research oppose the injunction, and the FTC's broad application of the injunction, to non-party LLT Research. The FTC, after not naming LLT Research in the Complaint, despite knowledge of its existence, has now frozen LLT Research's assets simply because Mr. Lee-Tyson owns it. (February 13, 2025, Order granting FTC's application for an *ex parte* temporary restraining order ("TRO", ECF No. 22, at p. 11.)  The FTC did so knowing LLT Research is a wholly independent business, Mr. Lee-Tyson's sole source of income

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION          CASE NO.: 2:25-CV-01115

1    and provides the means to purchase food, pay his mortgage, debts, taxes, and living

2    expenses.

3        To be clear, Mr. Lee-Tyson and LLT Research do not oppose an order from

4    this Court restraining them from illegal activities or certain conduct, but the FTC (and

5    this Court) may not restrain lawful activities, especially those of non-parties. The

6    FTC's application of the TRO, freezing non-party assets deprives Mr. Lee-Tyson

7    from the ability to take in revenue and pay out expenses. The FTC's excessive

8    position will destroy LLT Research and Mr. Lee-Tyson's ability to perform

9    uncontroversial, and lawful, work.

10       Mr. Lee-Tyson therefore submits this limited opposition to the TRO, and

11   agreeing to the general terms of the stipulated injunction (ECF No. 28), except that:

12   (1) LLT Research's business financial accounts be unfrozen so he can operate LLT

13   Research and be permitted to generate income and pay ongoing business expenses;

14   (2) that the injunction order be modified so that he can pay credit card debt, which the

15   FTC refuses to allow; (3) that the $44,000 monthly living expense be modified so

16   that California state property taxes on his home may be paid in April, as the FTC

17   refuses to allow California state property taxes to be paid; and (4) that the Court

18   permit the sale of a vehicle, as the FTC has not yet approved the sale, but in the

19   interim will not allow Mr. Lee-Tyson to make payments on the vehicle loan.

20   II.  **FACTUAL BACKGROUND**

21       On or about February 10, 2025, the FTC filed a 55-page Complaint initiating

22   this action.  ECF No. 1.  The Appendix of Exhibits ("AOE") accompanying the

23   Complaint is approximately, 1,127 pages.  *Ibid.*  The AOE commingles documents

24   and exhibits without distinguishing what particular documents support its claims

25   against any particular defendant.  *Ibid*.

26       On February 13, 2025, this Court granted a temporary restraining order

27   ("TRO").  ECF No. 22.  Nearly two weeks later, on February 26, 2025, Growth Cave

28

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

1    and Mr. Lee-Tyson received notice of the TRO and that their assets had been frozen.

2    *See* Declaration of Lucas Lee Tyson ("Lee-Tyson Decl.") ¶ 10.

3          On February 27, 2025, the FTC served Growth Cave and Mr. Lee-Tyson with

4    the Complaint, AOE, and accompanying documents.  ECF Nos. 29. 30.

5          On March 3, 2025, within two-business days of being served with the

6    Complaint, Growth Cave and Mr. Lee-Tyson enlisted counsel.  *See* Declaration of

7    Daniel P. Kappes ("Kappes Decl.") ¶ 4.  Counsel immediately met with the FTC to

8    seek clarity regarding the preliminary injunction, the scope of encumbered property,

9    and requested a short extension of the original injunction hearing. *Ibid*.  At this

10   meeting, Counsel provided information regarding Mr. Lee-Tyson's current business

11   dealings, relationship to other named defendants, and explained that he and Growth

12   Cave were no longer affiliated with defendants Mr. Batte, Mr. Marksberry, or their

13   new business Apex Mind, LLC. *Id*. ¶ 7.  Counsel requested a short extension to

14   respond to the TRO and to prepare for the hearing on the preliminary injunction.

15   That same day, at 9:38 p.m., the FTC rejected the request for a brief extension and

16   proposed that the TRO become final and binding.  *Id*. ¶ 10.

17         At the March 5, 2025 hearing, Growth Cave and Mr. Lee-Tyson negotiated in

18   good faith with the FTC to achieve a stipulated preliminary injunction. *Id*. ¶ 11.  The

19   parties agreed to extend the TRO, as modified, through March 26, 2025, to allow

20   Mr. Lee-Tyson to expend $44,000.00 in monthly reasonable living expenses, the

21   majority of which is a home mortgage payment.  *Ibid*.

22         Following the March 5 hearing, Mr. Lee-Tyson has worked diligently to

23   collect and produce documents as required under the TRO and in response to the

24   FTC's informal requests for production.  Mr. Lee-Tyson and Growth Cave have since

25   produced over 11 gigabytes of information to the FTC.  *Id*. ¶ 17.  Included in the

26   production are documents responsive to the FTC's following informal requests:

27         1.   Documents sufficient to show any existing business relationships
              between LLT Research and customers;

28

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

2.  Documents sufficient to show the current business activities of LLT
    Research;
3.  Documents reflecting all customer complaints, lawsuits, or
    negative reviews regarding any product or service sold by LLT
    Research;
4.  Documents reflecting advertisements of LLT Research's products
    or services;
5.  To the extent not already produced, documents reflecting:
    a.  LLT Research's revenues and profits; and
    b.  Sources of incoming or outgoing funds for LLT Research.

Mr. Lee-Tyson has produced documents responsive to these categories and will

continue to make productions on a rolling basis, as proposed by the FTC. *Id*. ¶ 18.  In

addition to providing documents, counsel for Growth Cave and Mr. Lee-Tyson have

met and conferred with the FTC's counsel in attempt to resolve the remaining issues

needed to stipulate to a preliminary injunction. *Id*. ¶ 19.  The parties, however are

unable to resolve (1) the scope and application of the asset freeze to LLT Research;

(2) payment of property taxes on Mr. Lee-Tyson's residence; (3) credit card

payments to prevent default; and (4) the sale of a vehicle to satisfy the debt incurred

to purchase it, thereby avoiding further payments on the loan.  Because the parties

could not come to an agreement informally, Growth Cave and Mr. Lee-Tyson submit

this opposition, which is limited to the four above-named issues.

## III.    LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, generally requiring the

movant to carry its burden of persuasion by a "clear showing."  (See *Mazurek v.

Armstrong* (1997) 520 US 968, 972; *Towery v. Brewer* (9th Cir. 2012) 672 F3d 650,

657.)  A higher "closely scrutinized" standard applies where, as here, a preliminary

injunction would provide substantially all the relief the movant would obtain after a

full trial on the merits.  (See *Schrier v. University of Colorado* (10th Cir. 2005) 427

F3d 1253, 1260-1261.); *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 25-26

(2008) (internal citations omitted) ( "A plaintiff seeking a preliminary injunction

must establish that he is likely to succeed on the merits, that he is likely to suffer

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

1   irreparable harm in the absence of preliminary relief, that the balance of equities tips
2   in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def.*
3   *Council, Inc.*, 555 U.S. 7, 25-26 (2008) (internal citations omitted).

4        To obtain such a preliminary injunction against a non-party, FTC must further
5   prove that the non-party is "in active concert or participation" with Defendants.
6   FRCP 65(d)(2)(C). A non-party is in "active concert or participation" only if the non-
7   party is "identified with [a party] in interest, in 'privity' with them, represented by
8   them or subject to their control." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14
9   (1945).

10        Any injunction against non-parties is also limited. Such non-parties may be
11   enjoined only "from knowingly aiding a defendant in performing a prohibited act…"
12   *Chase Nat. Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 436–37 (1934). The
13   purpose of such injunctions is "that defendants may not nullify a decree by carrying
14   out prohibited acts through aiders and abettors, although they were not parties to the
15   original proceeding." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945). This
16   serves the aims of due process, for courts "may not grant an enforcement order or
17   injunction so broad as to make punishable the conduct of persons who act
18   independently and whose rights have not been adjudged according to law." *Id*. at 13.

19        "A party seeking an asset freeze must show a likelihood of dissipation of the
20   claimed assets, or other inability to recover monetary damages, if relief is not
21   granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). In all cases, the
22   burden of persuasion remains with the party seeking preliminary injunction relief.
23   *West Point-Pepperell, Inc. v. Donovan* (11th Cir. 1982) 689 F2d 950, 956.

## IV.   **ARGUMENT**

25        Growth Cave and Mr. Lee-Tyson do not contest the application of the
26   injunction as to the prohibition of activities that allegedly violate section 5(a) of the
27   FTC Act 15 U.S.C. § 45(a) ("FTCA"), the Business Opportunities Rule, the Credit
28   Repair Organizations Act ("CROA"), and the Reviews and Testimonials Rule.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Growth Cave does not contest the asset freeze as to any of its assets. The question before the Court is whether the asset freeze should extend to a non-party consulting service operated by Mr. Lee-Tyson.  It should not.

The Court should decline to extend the asset freeze to LLT Research accounts for two reasons.  First, freezing the assets of LLT Research is tantamount to enjoining the business from operating, and the FTC has not and cannot meet its burden to so enjoin LLT Research from operating. Second, extending the asset freeze to LLT Research would be counterproductive from the perspective that it would effectively deplete the assets available for restitution.

A.    **The FTC Cannot Sustain Its Burden to Enjoin Mr. Lee-Tyson from Conducting Lawful Business.**

Extending the asset freeze to the LLT Research accounts would effectively enjoin the operation of a business unnamed in the FTC's Complaint.  Thus, the FTC must first demonstrate it is entitled to injunctive relief with regard to LLT Research and that it is also entitled to the ancillary relief of an asset freeze against the same.

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 690 (2008).  Obtaining a preliminary injunction thus requires a special and difficult showing. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In addition, when brought against a non-party like LLT Research, the FTC must provide a clear showing that a non-party is "in active concert or participation" with Defendants. FRCP 65(d)(2)(C). A non-party is in "active concert or participation" only if the non-party is "identified with [a party] in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945). Even where that is shown, the injunction may extend

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

only to the unlawful conduct. A "court may not issue injunctive relief 'so broad as to make punishable the conduct' of any third party simply because it was given actual notice of the injunction but is otherwise 'act[ing] independently and whose rights have not been adjudged according to law.'" *Nutramax Lab'ys, Inc. v. Tovar*, No. 5:23-CV-02366-MRA-SP, 2024 WL 3221731, at *8 (C.D. Cal. 2024).

1.    **The FTC Cannot Demonstrate Likelihood of Success on the Merits That LLT Research Should Be Enjoined From Operating by Freezing Its Assets**

LLT Research is not named or referenced in the FTC's Complaint and the FTC makes no allegations that LLT Research engages in any wrongdoing whatsoever. The only connection between the allegations in the Complaint and LLT Research is that Growth Cave allegedly marketed a product named PassiveApps in a manner that violated the FTCA.[1] In full transparency, Mr. Lee-Tyson and LLT Research disclosed to the FTC that PassiveApps was an LLT Research owned product, but that LLT Research also engaged in other business endeavors, wholly unrelated to the sale of this one product. Kappes Decl. ¶ 11. The FTC, based on this disclosure, now takes the position that the sale of a single product, permits the FTC to prevent bar LLT Research from ***any*** activities. This is a step too far.

Based on the Court's TRO, LLT Research discontinued the sale of the PassiveApps product and does not market the product at all. Lee-Tyson Decl. ¶ 6. LLT Research also disabled PassiveApps's enrollment process, ceased paid advertisements of the product, and it is no longer available for purchase. *Ibid*. While the website does remain active,[2] new customers cannot enroll and the last customer purchased the product on or about February 24, 2025, a date prior to service of the TRO. *Ibid*. Relevant to the FTC's broad application of its proposed injunction against LLT Research is that this product only generated approximately $600,000

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

---

[1]    The FTC alleges PassiveApps was sold by Growth Cave.
[2]    The PassiveApps's website is active to ensure no loss of data or spoliation. LLT Research will gladly work with the FTC to cooperatively disable the website as appropriate.

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION          CASE NO.: 2:25-CV-01115

during the period it was sold. *Ibid*. Accordingly, the complained of conduct has ceased and LLT Research does not oppose an injunction forbidding the sale or marketing of the PassiveApps product.

In fact, the stipulated portion of the injunction prohibits Mr. Lee-Tyson from marketing any product or service in any way that violates relevant law or FTCA regulations. In other words, through his business, Mr. Lee-Tyson and LLT Research are already prohibited from certain acts, but given the FTC's blanket asset freeze, LLT Research and Mr. Lee-Tyson can engage in no business.

More importantly, with regard to the injunction and basis for an asset freeze against LLT Research, the FTC cannot succeed on the merits because LLT Research is not a named party to this lawsuit. Putting that threshold issue aside, the FTC is unlikely to prevail at this injunction stage because: (1) a defunct product offering cannot cause irreparable harm and (2) the FTC does not allege any other misconduct against LLT Research. Far from the "clear showing" required, the FTC has made ***no showing*** that it will succeed on the merits against LLT Research and any services it offers to existing clients.

Putting aside the lack of allegations against LLT Research or how any other products and services it offers violate the law, it is disputed that the PassiveApps product was unlawfully sold, advertised, or marketed. At all times, the passiveapps.com website disclosed that:

> "Earnings and income representations made by Lucas Lee-Tyson, PassiveApps, PassiveApps.com and their advertisers/sponsors (collectively, 'PassiveApps') are aspirational statements only of your earnings potential. These results are not typical and results will vary. The results on this page are OUR results and from years of testing. We can in NO way guarantee you will get similar results. PassiveApps does not promise or guarantee your financial success, nor warrant any earning claims made for their products. Your results will vary and depend on many factors that are unique to you including passion, business acumen, work ethic and more."

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

The PassiveApp contract that customers agreed to upon payment, similarly stated:

> **Earnings Disclaimer**. PassiveApps cannot and does not guarantee or promise any level of earnings within a specific timeframe. Obviously, your level of success and timeline in obtaining results is dependent upon a number of factors including your skill, knowledge, ability, dedication, business savvy, network, and financial situation, to name a few. Because these factors differ among clients, PassiveApps cannot and does not guarantee your success, income level, or ability to earn revenue within a specific timeframe. You alone are responsible for your actions and results in life and your business. It should be clear to you that by law PassiveApps offers no professional legal, medical, psychological or financial advice.

*Ibid.*

The FTC's 55-page Complaint devotes a mere five paragraphs to claims the PassiveApps product is unlawful under the FTC's Business Opportunity Rule, 16 C.F.R. § 437 and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Upon close examination, however, the few allegations fall far short. First, the Complaint does not identify how or why the PassiveApps product, which allows users to build mobile applications ("Apps") through AI software is subject to the Business Opportunity Rule, 16 C.F.R. § 437.1.

To qualify as a "business opportunity" a product like PassiveApps must be a "commercial arrangement," in which:

(1) A seller solicits a prospective purchaser to enter into a new business; and

(2) The prospective purchaser makes a required payment; and

(3) The seller, expressly or by implication, orally or in writing, represents that the seller or one or more designated persons will:

(i) Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the purchaser; or

14

(ii) Provide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services; or

(iii) Buy back any or all of the goods or services that the purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including but not limited to providing payment for such services as, for example, stuffing envelopes from the purchaser's home.

16 C.F.R. § 437.1(c).

Here, LLT Research's PassiveApps product does not meet the definition of a business opportunity according to the Regulation's plain terms. 16 C.F.R. § 437.1(c)(3)(i)-(iii). The FTC does not allege the PassiveApps provided: (i) "locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the purchaser"; (ii) "outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services," or (iii) that it offered to buy "back any or all of the goods or services that the purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including but not limited to providing payment for such services as, for example, stuffing envelopes from the purchaser's home."

To be clear, LLT Research did not offer such goods or services to purchasers. To the extent the FTC takes issue with LLT Research's one marketing statement that it had a "list of creators who're hiring right NOW" (Cmplt. ¶ 110), LLT did possess a list of creators and the FTC provides no contrary allegation or proof it did not.  Lee-Tyson Decl. ¶ 6. Either way, representing that third parties are "hiring right now", is a far cry from a misrepresentation that LLT Research would provide "accounts, or customers" for the "purchaser's goods or services."

The same is true with regard to purported FTCA violations. The Complaint cites marketing statements that PassiveApps will provide purchaser's a "quality

15

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION    CASE NO.: 2:25-CV-01115

control service," and that a "team of experts will review and approve your app before it goes live." Cmplt. ¶ 110.  It alleges that PassiveApps customers generally "want their app reviewed before they launch to 'make sure that it's actually going to make them money,' and thus PassiveApps's "team will 'personally review and approve' each app so that purchasers are '100% confident' their app is 'ready to go to maximize profits.'" *Id*.  Left unsaid is how these statements were false or misleading. Also unclear is why a statement for a now discontinued product, should bar the business from conducting lawful, constitutionally protected activities going forward. *See Waldman Pub. Corp. v. Landoll, Inc*., 43 F.3d 775, 785 (2d Cir. 1994) ("an injunction should not impose unnecessary burdens on lawful activity").

But even if the FTC were to ultimately prove a marketing testimonial or statement lacked fulsome support, the injunction should not preclude LLT Research from advertising, selling, or providing other lawful products and services now or in the future.  Given the FTC has obtained the relief they sought, the cessation of the sale of PassiveApps product and unlawful advertisements thereto, and LLT Research agrees to cease unlawful marketing of the product (or any other unlawful advertising), this Court should permit LLT Research to conduct lawful business.

Accordingly, an injunction freezing LLT Research's assets should be denied because "a 'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits."  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Disney Enters., Inc. v. VidAngel, Inc*., 869 F.3d 848, 856 (9th Cir. 2017)).

## 2.    Excluding LLT Research from the Asset Freeze Will Not Result in Irreparable Harm

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."  *Weinberger v. Romero-Barcelo* 456 US 305, 312 (1982); *Stanley v. University of Southern Calif.* (9th Cir. 1994) 13 F3d 1313, 1320.  Plaintiffs seeking preliminary relief must demonstrate that irreparable

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

injury is likely in the absence of an injunction.  (*Winter v Nat. Res. Def. Council, Inc.* 555 US 7, 22 (2008); *see Freedom Holdings, Inc. v. Spitzer* 408 F3d 112, 114 (2nd Cir. 2005) (irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction"); *Apple, Inc. v. Samsung Electronics Co., Ltd.* 678 F3d 1314, 1325 (Fed. Cir. 2012) (movant must make "clear showing" of likelihood of irreparable harm) (internal quotes omitted).

Unlike Growth Cave, which ran a primarily business-to-consumer model, LLT Research operates a business-to-business model.  Lee-Tyson Decl. ¶¶ 19–21.  It has fewer than 30 customers, all of whom are established businesses in a broad range of industries, including relationships, fitness, and life coaching.  *Id.* ¶ 20.  Mr. Lee-Tyson has provided documentation to the FTC regarding LLT Research's activities, including its marketing and advertising campaigns.  *Id.* ¶ 18.  And, critically, LLT Research does not engage in the activities alleged against Growth Cave, such as credit repair services or the offering of business opportunities.  *Id.* ¶ 19.  Thus, there is no basis to enjoin LLT Research from its lawful conduct and the controverted asset freeze should not be granted.

### 3. The Balance of Equities Favors Excluding LLT Research from the Asset Freeze

The FTC has provided no showing that consumers are at risk from LLT Research's operations.  Without a clear showing that irreparable harm is likely, there are no equities to balance against those of Mr. Lee-Tyson.  (See *D.T. v. Sumner County Schools* (6th Cir. 2019) 942 F3d 324, 326-327 ("even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement" (internal quotes omitted).)

On the other hand, Mr. Lee-Tyson (through LLT Research) currently personally assists approximately 30 business customers, who have already hired him to perform advertising-consulting services.  Lee-Tyson Decl. ¶ 20.  Should the injunction issue, Mr. Lee-Tyson will be deprived of his ability to earn a living by

operating his business.  *Id.* ¶¶ 16, 23–26.  The customers will lose access to certain
services, phone lines, emails, or already-paid-for services.  *Id*. ¶¶ 14. And
independent contractors of the new, unrelated businesses, will, or have lost
employment opportunities.  As currently applied, the injunction forbids LLT
Research from paying for business operations, paying debts, hiring independent
contractors, paying for third-party services, paying taxes, or obtaining funds from
products and services unrelated to the PassiveApps product. *Id.* 16.  The FTC's
overly-aggressive application of the asset freeze jeopardizes all the above.  The
balance of equities therefore favors denying the injunction as to non-party LLT
Research.

### 4.    The Public Interest Will Not Be Served by Freezing LLT Research's Assets

Finally, the FTC must make a clear showing that a preliminary injunction is in
the public interest.  *FTC v. Vemma Nutrition Co*., 2015 U.S. Dist. LEXIS 179855, at
*22 (D. Ariz. September 18, 2015) (citing *Winter*, *supra*, 555 U.S. at 20)). "In each
case, courts 'must balance the competing claims of injury and must consider the
effect on each party of the granting or withholding of the requested relief,' paying
particular attention to the public consequences."  *Ibid*.

Here, extending the asset freeze to LLT Research is against the public interest.
First, LLT Research is engaged in lawful business activities.  Lee-Tyson Decl. ¶ 19,
20. Stifling lawful commerce is never in the public interest.  *See Waldman Pub.
Corp. v. Landoll, Inc*., 43 F.3d 775, 785 (2d Cir. 1994) ("an injunction should not
impose unnecessary burdens on lawful activity").  And, second, the FTC does not
name LLT Research in its Complaint and makes no allegations of misconduct against
the same.  Such overbroad injunctive relief is against public policy.  *See Starter
Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir.1999) (vacating injunction that
went "beyond the scope of the issues tried in the case").

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

1    Moreover, Mr. Lee-Tyson has a strong interest in continuing to operate LLT

2    Research.  While "[p]rivate equities are not entitled to controlling weight ... they are

3    given serious consideration, particularly if the defendant can show irreparable injury

4    from the grant of an injunction." *FTC v. Credit Bureau Ctr., LLC*, 235 F. Supp. 3d

5    1054, 1064 (N.D. Ill. 2017) (citing *FTC v. Elders Grain, Inc*., 868 F.2d 901, 903 (7th

6    Cir. 1989)).  In this case, there is no dispute that granting the injunction would cause

7    irreparable injury to Mr. Lee-Tyson.  Lee-Tyson Decl. ¶¶ 16, 23–26.  Thus, LLT

8    Research's accounts should not be frozen.

9    **5.    The FTC's Proposed Injunction Goes Beyond the Permissible**

10    **Scope**

11    Notwithstanding any of the above, even if the FTC were to prevail on all

12    required showings by clear and convincing evidence, its proposed blanket freeze

13    would still be impermissible. Injunctions against non-parties are limited to those

14    which enjoin the non-party "from knowingly aiding a defendant in performing a

15    prohibited act…" *Chase Nat. Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 436–37

16    (1934). The purpose of such injunctions is "that defendants may not nullify a decree

17    by carrying out prohibited acts through aiders and abettors, although they were not

18    parties to the original proceeding." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14

19    (1945). This serves the aims of due process, for courts "may not grant an enforcement

20    order or injunction so broad as to make punishable the conduct of persons who act

21    independently and whose rights have not been adjudged according to law." *Id.* at 13.

22    Here, it is undisputed that LLT Research carries on business wholly

23    independent from the conduct FTC contends is wrongful and seeks to enjoin. The

24    FTC cites no conduct beyond the sale of the PassiveApps product that LLT Research

25    engaged in. LLT Research is not a party to this action, and therefore any injunction

26    may be issued *only* to prevent it from engaging or assisting in the allegedly wrongful

27    conduct. The injunction must be tailored to permit LLT Research to carry on all other

28    lawful activity. LLT Research does not contest the entry of an injunction that

prohibits it from "knowingly aiding a defendant in performing a prohibited act," it contests the entry of an injunction so broad that it prohibits it from performing *permitted* acts and nullifying its ability to perform them. LLT is not a party and its rights have not been "adjudged according to law." *Id.* As such, the maximum injunction the FTC may obtain, consistent with Constitutional requirements of due process, is one prohibiting LLT Research from assisting with sales or marketing of the PassiveApps product.

**B.**     **Freezing LLT Research's Accounts Would Be Counterproductive to the FTC's Claimed Goal to Remediate the Alleged Harm by Depleting the Assets Available to Former Growth Cave Customers.**

"[C]ourts cannot enjoin the transfer of assets simply to ensure the collectability of a money judgment." Stevenson & Fitzgerald, Fed. Civ. Pro. Before Trial (The Rutter Group April 2024 Update) ¶ 13:63. Courts may enjoin asset transfers as "ancillary" to their power to provide final equitable relief: "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.* 970 F2d 552, 560-561 (9th Cir. 1992) (internal quotes omitted). A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

In *SEC v. Binance Holdings Ltd.*, No. 23-1599, Dkt. 71 (D.D.C. June 17, 2023) the U.S. Government agreed to a Consent Order which was substantially less draconian than the expansive Order sought in this matter. In *Binance*, even with allegations of fraud and billions of dollars in investor harm, the SEC agreed it was appropriate for Binance Holdings to "dispose, transfer, pledge, encumber, or assign assets presently owned by BAM Management or BAM Trading, in whatever form such assets may exist and wherever located, solely to make payments for expenses or to satisfy obligations incurred in the ordinary course of business." *Id*. at Dkt. 71 ¶ 3.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION          CASE NO.: 2:25-CV-01115

Here, however, FTC makes a sweeping demand that LLT Research permanently lose access to funds that have no bearing or relation to defendants' alleged misconduct.  Rather than place a hold on assets, accounts, or amounts not necessary "satisfy obligations incurred in the ordinary course of business," the FTC seeks to shut down LLT Research and Mr. Lee-Tyson's entire business operations by freezing all accounts, precluding either from paying employees, ongoing expenses, and debt obligations.  Lee-Tyson Decl. ¶¶ 16.

Moreover, an asset freeze may be denied where it would "thwart the goal of compensating [harmed consumers] if the freeze were to cause such disruption of defendants' business affairs that they would be financially destroyed. Thus, the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982) (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105-1106 (2 Cir., 1972) (abrogated on other grounds)).

Here, the balancing exercise clearly favors denying the asset freeze of LLT Research.  Such an asset freeze is not needed to prevent dissipation of assets available for restitution. To the contrary, extending the asset freeze to LLT Research's accounts would diminish the amount of assets available to consumers should the FTC prevail on its claims for monetary relief.  Last month, for example, LLT Research generated $73,000 in revenue. Lee-Tyson Decl. ¶ 21. If the asset freeze extends to LLT Research accounts, that money will be lost, its roughly 14 independent contractors jobless, and its clients without the services upon which they rely. *Id.* ¶ 16. Thus, the asset freeze should not extend to LLT Research.

## C.    **The Court Should Modify the Stipulated Injunction.**

"It is well settled that [district courts have the] authority to freeze personal assets temporarily." *S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001).  District courts are also empowered with "the corollary authority to release frozen personal assets, or lower the amount frozen." *Ibid.*  In

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

determining whether to modify an asset freeze, courts generally consider the

following four factors: (1) the interests of the allegedly defrauded consumers; (2)

source of the funds to be released; (3) balance of interests; and (4) the expenses

defendant seeks to pay.  *S.E.C. v. Forte*, 598 F. Supp. 2d 689, 692 (E.D. Pa. 2009);

see also *Fed. Trade Comm'n v. Telestar Consulting, Inc.*, No. CV1600555SJOSSX,

2017 WL 11632797, at *3 (C.D. Cal. Mar. 22, 2017) (using *Forte* factors to analyze

request to modify asset freeze).  Here, all factors favor modifying the asset freeze of

the stipulated injunction.

### 1.    The interests of the allegedly defrauded consumers

An asset freeze is "justified as a means of preserving funds for the equitable

remedy of disgorgement".  *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th

Cir.2005).  Thus, an order modifying an asset freeze may benefit the alleged victims

when, as here, the freeze would "thwart the goal of compensating" those harmed by

causing "disruption of defendants' business affairs that they would be financially

destroyed." *F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982).  For the

reasons discussed above, applying the asset freeze to LLT Research would be

counterproductive to the FTC's stated goal of renumeration.

### 2.    Source of the funds to be released

The funds to be released may be categorized into two groups: (1) ongoing

business activities of LLT Research; and (2) other income, including from prior

operations, investments, and interest.  Regarding the first category, and as shown

above, the funds generated through LLT Research's ongoing operations should not be

subject to the asset freeze.  Regarding the second category, the requested funds are

required to maintain the status quo, including to safeguard the funds available for

renumeration.

### 3.    Balance of interests; and (4) expenses defendant seeks to pay

Mr. Lee-Tyson also requests minor modifications to any issued injunction to

pay reasonable and necessary expenses. First, the Stipulated Injunction should be

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

modified to allow Mr. Lee-Tyson to pay existing credit card debt.  Mr. Lee-Tyson owes approximately $314,781.79 on five separate accounts, which was disclosed to the FTC on March 4, 2025, as required by the Court's TRO.  At the Parties' first hearing on this matter, in which the FTC agreed to a monthly stipend for certain living expenses and taxes, the FTC refused to allow Mr. Lee-Tyson to pay ***any*** amounts on this existing debt.  Kappes Decl. ¶ 12. Should this Court preclude Mr. Lee-Tyson from paying this debt, it is certain that his credit score will be impacted, there will be a default on the debts, and additional time, expense, and harm to Mr. Lee-Tyson will result. Mr. Lee-Tyson, except for the injunction and asset freeze on his business and personal bank and investment accounts could satisfy this outstanding debt through investment accounts. Lee-Tyson Decl. ¶ 25. The Court should allow Mr. Lee-Tyson access to his funds to pay off these amounts while this litigation is pending.

Second, any injunction should permit Mr. Lee-Tyson to pay state property taxes on his California home of approximately $32,265.90 and approximately $2,328 to insure the home. Lee-Tyson Decl ¶¶ 23–24..  The tax payment is due on or before April 30, 2025 and the insurance payment on April 10, 2025.  *Ibid.*  The current injunction while permitting a monthly stipend of $44,000 does not account for, nor leave sufficient monthly withdrawal for this payment.  *Ibid.*  At the Parties' March 5, 2025, hearing the FTC represented it did not object to payment of property taxes. Kappes Decl. ¶ 12. Nevertheless, the TRO does not contemplate a withdrawal of assets to pay this sum.  *See* ECF No. 28. On March 18, 2025, the FTC stated its goal was to preserve assets and was not inclined to allow payment of property taxes. The FTC requested proof Mr. Lee-Tyson owes these taxes, which was produced to the FTC. Kappes Decl. ¶ 16.   On the eve of filing, the FTC indicated it is open to a one-time payment of property taxes. *Id*. ¶ 20.

Finally, Mr. Lee-Tyson currently owes monthly payments of $3,027.65 on a vehicle.  The total amount outstanding on the vehicle loan is approximately

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

#518233168_v11

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION          CASE NO.: 2:25-CV-01115

$287,633.23, with an asset value of approximately $350,000.  Lee-Tyson Decl. ¶ 26. The FTC, however, will not permit monthly loan payments on this vehicle and the allowable monthly living expenses are insufficient to cover the costs of this loan. Accordingly, Mr. Lee-Tyson seeks Court permission to dissipate this asset, as the failure to make payments will likely lead to repossession. *Ibid*. Proceeds from the sale may be used to satisfy ongoing living expenses and/or potential remediation and will be deposited in an appropriate account.  In that regard, no party benefits from the repossession of this vehicle, which the FTC recognized during the Parties' meet-and-confer efforts undertaken in conjunction with the Court's March 5, 2025, hearing. Kappes Decl. ¶ 12. At that time, the FTC represented it did not object to the sale of the vehicle, but did not yet have authority to allow Mr. Lee-Tyson to sell the vehicle (currently owned by LLT Research).  On the date of this filing the FTC, proposed the sale may take place, but with certain strings attached. *Id*. ¶ 20. Thus, the Court should allow for the sale of the vehicle.

Accordingly, the *Forte* factors for the modification are met and the requested funds should be released.

## V.    **CONCLUSION**

For the above-stated reasons, Mr. Lee-Tyson respectfully requests that the preliminary injunction be denied with respect to the accounts of LLT Research and the asset freeze be lifted from the same.

DATED:  March 19, 2025                    HOLLAND & KNIGHT LLP

                                          /s/ *Daniel Kappes*
                                          Daniel P. Kappes
                                          Zachary J. Watson

                                          Attorneys for Growth Cave, LLC and Lucas Lee-Tyson

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

1

## **CERTIFICATE OF COMPLIANCE**

2

3      The undersigned, counsel of record for Growth Cave, LLC, certifies that this

brief contains 6,306 words, which complies with the word limit of L.R. 11-6.1.

4

5    DATED:  March 19, 2025             HOLLAND & KNIGHT LLP

6

7                                       /s/ *Daniel P. Kappes*
                                        Daniel P. Kappes
                                        Zachary J. Watson

8
                                        Attorneys for Growth Cave, LLC and Lucas
9                                       Lee-Tyson

10

11

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' LIMITED OPPOSITION TO PRELIMINARY INJUNCTION       CASE NO.: 2:25-CV-01115