MARIS K.V. SNELL, FL Bar No. 125585
msnell@ftc.gov
ADRIENNE JENKINS, OH Bar No. 0089568
ajenkins@ftc.gov
Federal Trade Commission
1111 Superior Avenue, Suite 200
Cleveland, OH 44114
Tel: (202) 660-8544
Fax: (216) 263-3426

MILES D. FREEMAN, Cal. Bar No. 299302
mfreeman@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorneys for Plaintiff Federal Trade Commission*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GROWTH CAVE, LLC, et al.<br><br>Defendants. | Case No. 2:25-cv-01115-DOC-RAO<br><br>**STIPULATION FOR ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF AS TO DEFENDANTS GROWTH CAVE, LLC, LLT RESEARCH LLC, AND LUCAS LEE-TYSON** |

On February 10, 2025, Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Growth Cave, LLC, also doing business as Buffalo Bridge, LLC and PassiveApps ("Growth Cave"); Apex Mind, LLC; Lucas Lee-Tyson; Osmany Batte, also known as Ozzie Blessed; and Jordan Marksberry (collectively, "Original Defendants"). Dkts. 1 & 2.

On February 13, 2025, the Court issued an *ex parte* Temporary Restraining Order against Original Defendants that included an asset freeze and other equitable relief. Dkt. 22. On February 25, 2025, the Court *sua sponte* extended the *ex parte* Temporary Restraining Order through March 5, 2025. Dkt. 23.

Defendants Growth Cave and Lee-Tyson were properly served with a summons, the Complaint, the Temporary Restraining Order, and the Order Extending Temporary Restraining Order through March 5, 2025. Dkt. 29, 30.

By way of stipulation filed April 1, 2025, the FTC and Defendants Growth Cave and Lee-Tyson stipulated to entry of a Preliminary Injunction. Dkt. 49, 50.

On May 9, 2025, Plaintiff FTC filed an Amended Complaint against the Original Defendants as well as LLT Research Limited Liability Company ("LLT Research") (collectively, with the Original Defendants, "Defendants"). Dkt. 59. The Amended Complaint also names Friendly Solar, Inc. as a Relief Defendant. *Id.*

Defendant LLT Research was properly served with a summons and the Amended Complaint. Dkt. 66.

Defendants Growth Cave and Lee-Tyson were properly served with the Amended Complaint.

By way of stipulation filed November 14, 2025, the FTC and Defendants Growth Cave, LLT Research, and Lee-Tyson stipulated to amend the Stipulated Preliminary Injunction to permit Lee-Tyson to sell specified real and personal property. Dkt. 106.

Plaintiff FTC and Defendants Growth Cave, LLT Research, and Lee-Tyson (collectively, "Stipulating Parties") now stipulate to entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") (lodged concurrently with this Stipulation) to resolve all matters in dispute in this action between them. Stipulating Parties have consented to entry of the Order without trial or adjudication of any issue of law or fact herein.

Stipulating Parties hereby stipulate to entry of the Order with the following terms:

## FINDINGS

A.     This Court has jurisdiction over this matter.

B.     The Amended Complaint charges that Defendants Growth Cave, LLT Research, and Lee-Tyson, along with the other defendants, participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45; and the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended; the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679.

C.     Defendants Growth Cave, LLT Research, and Lee-Tyson neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for the purposes of this action, Defendants Growth Cave, LLT Research, and Lee-Tyson admit the facts necessary to establish jurisdiction.

- 3 -

D.      Defendants Growth Cave, LLT Research, and Lee-Tyson waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

E.      Defendants Growth Cave, LLT Research, and Lee-Tyson waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.      "**Assisting Others**" includes the following:

1.      Performing customer service functions, including receiving or responding to consumer complaints;

2.      Formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.      Formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.      Providing names of, or assisting in the generation of, potential customers;

5.      Performing marketing, billing, payment processing, or payment services of any kind; or

6.      Acting or serving as an owner, officer, director, manager, or principal of any entity.

- 4 -

B.      "**Business Opportunity**" means a commercial arrangement in which:
(1) A seller solicits a prospective purchaser to enter into a new business; and (2)
The prospective purchaser makes a required payment; and (3) The seller, expressly
or by implication, orally or in writing, represents that the seller or one or more
designated persons will: (i) Provide locations for the use or operation of
equipment, displays, vending machines, or similar devices, owned, leased,
controlled, or paid for by the purchaser; or (ii) Provide outlets, accounts, or
customers, including, but not limited to, Internet outlets, accounts, or customers,
for the purchaser's goods or services; or (iii) Buy back any or all of the goods or
services that the purchaser makes, produces, fabricates, grows, breeds, modifies, or
provides, including but not limited to providing payment for such services as, for
example, stuffing envelopes from the purchaser's home.

C.      "**Clearly and conspicuously**" means that a required disclosure is
difficult to miss (i.e., easily noticeable) and easily understandable by ordinary
consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the
disclosure must be made through the same means through which
the communication is presented. In any communication made
through both visual and audible means, such as a television
advertisement, the disclosure must be presented simultaneously in
both the visual and audible portions of the communication even if
the representation requiring the disclosure ("triggering
representation") is made through only one means.

2.      A visual disclosure, by its size, contrast, location, the length of
time it appears, and other characteristics, must stand out from any
accompanying text or other visual elements so that it is easily
noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the triggering representation appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

D.      "**Close proximity**" means that the disclosure is very near the triggering representation. For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

E.      "**Credit Repair Service**" means any service, in return for payment of money or other valuable consideration, for the express or implied purpose of: (1) improving any consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating; or (2) providing any advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating.

F.      "**Earnings Claim(s)**" means any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific

- 6 -

level or range of actual or potential sales, or gross or net income or profits. Earnings Claims include, but are not limited to: (1) any chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; and (2) any statements from which a prospective purchaser can reasonably infer that he or she will earn a minimum level of income.

G.    "**Stipulating Defendants**" means Defendants Growth Cave, LLT Research, and Lee-Tyson.

## ORDER

## I.    BAN ON SALE OR MARKETING OF BUSINESS OPPORTUNITIES

**IT IS ORDERED** that Stipulating Defendants are permanently restrained and enjoined from:

A.    Advertising, marketing, distributing, promoting, or offering for sale, or Assisting Others in advertising, marketing, distributing, promoting, or offering for sale, any Business Opportunity; and

B.    Holding, directly or through a third party, any ownership or other financial interest in any business entity that is advertising, marketing, distributing, promoting, or offering for sale, or that is Assisting Others in advertising, marketing, distributing, promoting, or offering for sale, any Business Opportunity, or any product or service to assist in the creation or development of a Business Opportunity.

## II.    BAN ON CREDIT REPAIR ACTIVITIES

**IT IS FURTHER ORDERED** that Stipulating Defendants are permanently restrained and enjoined from:

A.    Advertising, marketing, distributing, promoting, or offering for sale, or Assisting Others in the advertising, marketing, distributing, promoting, or offering for sale, any Credit Repair Service; and

B.     Holding, directly or through a third party, any ownership or other financial interest in any business entity that is advertising, marketing, distributing, promoting, or offering for sale, or that is Assisting Others in advertising, marketing, distributing, promoting, or offering for sale, any Credit Repair Service, or any product or service to assist in the creation or development of a Credit Repair Service.

## III.     PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service are permanently restrained and enjoined from:

A.     Making any Earnings Claims, or Assisting Others in making any Earnings Claims, to a prospective purchaser, unless the Earnings Claim is non-misleading and, at the time the Earnings Claims is made, Stipulating Defendants (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claimed earnings and that the claimed earnings are typical for consumers similarly situated to those to whom the claim is made; and (3) make the written substantiation for Earnings Claims available upon request to the consumer, potential purchaser, or the FTC;

B.     Making or disseminating, or Assisting Others in making or disseminating, false, unsubstantiated, or misleading testimonials;

C.     Misrepresenting or failing to disclose, Clearly and Conspicuously and in Close Proximity to the representation, or Assisting Others in misrepresenting or failing to disclose, Clearly and Conspicuously and in Close Proximity to the representation, that a reviewer or testimonialist has a material relationship to the company or individual selling the product or service;

- 8 -

D.   Misrepresenting, or Assisting Others in misrepresenting:

1.   The level or range of actual or potential sales, or gross or net income or profits, revenues, financial gains, percentage gains, or return on investment associated with a particular product or service;

2.   That a product or service will use artificial intelligence (AI) to maximize revenues or otherwise enhance the profitability, effectiveness, or efficiency of the product or service; or

3.   The amount of time a product or service will take to use, be effective, complete, or become profitable;

E.   Misrepresenting or Assisting Others in misrepresenting, expressly or by implication, any other fact material to consumers concerning any good or service, such as: the total costs; the amount of time necessary to achieve the represented results; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## IV.   MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.   Judgment in the amount of Forty-Eight Million, Five Hundred and Ninety-Seven Thousand, Five Hundred and Thirty-Eight Dollars ($48,597,538) is entered in favor of the Commission against Stipulating Defendants as monetary relief. The liability of Stipulating Defendants for the judgment shall be joint and several with any other Defendants or others to the extent subsequently ordered.

B.   In partial satisfaction of the monetary judgment set forth in Section IV.A, the following transfers shall be made to the Commission by electronic fund transfer in accordance with instructions provided by a representative of the Commission:

1.  BlueVine shall immediately transfer to the Commission all assets held in the accounts ending in account numbers 0516, 2147, 4544, 4577, and 9945 in the name of LLT Research Limited Liability Company;

2.  Within three (3) days of entry of this Order, Stipulating Defendants, to the extent they have not already done so pursuant to the Amended Stipulated Preliminary Injunction (Dkt. 107), shall take all necessary steps to liquidate all assets in the Vanguard Brokerage Services accounts ending in account numbers 8409, 1176, 6531, and 8482 in the name of Lucas Lee-Tyson (collectively, "Vanguard accounts") and transfer all proceeds of liquidation to the Commission, except that:

    a.  As to the Vanguard Brokerage Services account ending in account number 8482, Lee-Tyson may retain One Hundred Thousand Dollars ($100,000) of the proceeds of such liquidation pursuant to the terms set out in the Amended Stipulated Preliminary Injunction (Dkt. 107); and

    b.  Within seven (7) days after liquidation of the Vanguard accounts, or within seven (7) days of the date of this Order if the Vanguard accounts have already been liquidated pursuant to the Amended Stipulated Preliminary Injunction (Dkt. 107), Lee-Tyson must provide FTC counsel with documents prepared by a certified public accountant which reflect the amount of applicable penalties and federal and state income taxes owed by Lee-Tyson as a result of the liquidation of the

- 10 -

Vanguard accounts, distributed investment income and capital gains related to the Vanguard accounts, and early withdrawal of the monies from the Vanguard accounts. After providing FTC counsel with the foregoing documentation, Lee-Tyson or Vanguard Brokerage Services may retain and transmit to the appropriate tax authorities the estimated amount of penalties and federal and state income taxes for the sole purpose of paying any applicable penalties and federal and state income taxes owed by Lee-Tyson as a result of the liquidation of the Vanguard accounts, distributed investment income and capital gains related to the Vanguard accounts, and early withdrawal of the monies from the Vanguard accounts. Additionally, Fifty Thousand Dollars ($50,000) may be transferred to the trust account of Stipulating Defendants' counsel, Holland & Knight, where such proceeds shall be preserved and may be released to Lee-Tyson for the sole purpose of paying any applicable penalties and federal and state income taxes owed by Lee-Tyson as a result of the liquidation of the Vanguard accounts, distributed investment income and capital gains related to the Vanguard accounts, and early withdrawal of the monies from the Vanguard accounts that exceed the previously-estimated amount. All remaining proceeds from the Vanguard accounts shall immediately be transferred to the Commission.

c.    By April 15, 2026, Lee-Tyson shall pay all applicable penalties and federal and state income taxes owed by Lee-Tyson as a result of the liquidation of the Vanguard accounts, distributed investment income and capital gains related to the Vanguard accounts, and the early withdrawal of monies from the Vanguard accounts. Immediately after payment of such taxes, Lee-Tyson and Stipulating Defendants' counsel, Holland & Knight, shall transfer to the Commission any remaining Vanguard funds that were not used to pay applicable taxes. Within three (3) days of paying such taxes, Lee-Tyson shall provide FTC counsel with documentation confirming the total amount of penalties and federal and state income taxes paid in relation to the Vanguard accounts.

3.    If he has not already done so pursuant to the Amended Stipulated Preliminary Injunction (Dkt. 107), Individual Defendant Lucas Lee-Tyson shall take the following steps to sell at fair market value all interests in the property located at 20511 Wells Drive, Woodland Hills, California 91364 (hereinafter, the "Property"):

a.    Lee-Tyson shall within three (3) days of entry of this Order list the Property for sale, provided that Lee-Tyson first obtains from FTC counsel written approval of the terms that Lee-Tyson establishes for the listing, including the list price and any real estate agent retained, which approval shall not be unreasonably withheld;

b.  Immediately upon receiving any offer to purchase the Property, Lee-Tyson's counsel shall notify FTC counsel of the amount of the offer, any other conditions of the offer, and the name(s) and address(es) of the person(s) or entity(ies) making such offer;

c.  Lee-Tyson shall take all reasonable steps to effectuate the sale of the Property, including, but not limited to, signing contracts with real estate agents, keeping the Property in good repair, keeping the Property in a condition suitable for showing to prospective purchasers, signing contracts for the sale of the Property, and signing all documents necessary or appropriate for the transfer of the Property to a new buyer(s);

d.  If, after three (3) months from the date of the entry of the Amended Stipulated Preliminary Injunction (Dkt. 107), all interests in the Property have not been sold, Lee-Tyson shall immediately retain an auction company and direct it to sell all remaining interests in the Property at public auction, provided that Lee-Tyson first obtains from counsel for the FTC written approval of the auction company and of the terms that Lee-Tyson establishes for the auction, which approval shall not be unreasonably withheld;

e.  Notwithstanding Section IV.B.3.d above, upon good cause, and to maximize value of the Property, the Stipulating Parties may agree in writing, without need for a further Court order, to extend the time period to auction

- 13 -

the Property for a period of up to three (3) additional months.

f.  Until Lee-Tyson transfers title and possession of the Property, Lee-Tyson shall take no action to diminish the value of the Property, including any structures, fixtures, and appurtenances thereto, but instead shall maintain the Property in the same condition as on March 4, 2025, the date Lee-Tyson provided his sworn financial statements to the FTC. Lee-Tyson shall be responsible for timely payment of all mortgage payments, fees, association dues, and all other attendant expenses related to the maintenance and ownership of the Property until such time as the Property is sold or auctioned. Lee-Tyson is also responsible for payment of all taxes related to ownership of the Property, including any associated penalties or late fees, until such time as the Property is sold or auctioned. Lee-Tyson further is required to continue and to maintain in full force insurance coverage on the Property until the sale or auction of the Property;

g.  All net proceeds from the sale or auction of the Property after payment of obligations due and owing to any valid mortgage holders and other priority lien holders, any property taxes owed, any adjustments in favor of the buyer(s) required to sell the property, and any reasonable and customary real estate agent fees and closing costs incurred in connection with such sale or auction that have been approved by counsel for the FTC, which approval

- 14 -

shall not be unreasonably withheld, shall be immediately transferred to the Commission, except:

    i.    Lee-Tyson may retain Seven Hundred Twenty-Two Thousand One Hundred Fifty-One Dollars ($722,151) of the net proceeds; and

    ii.    If the sale price of the Property is at least Five Million Two Hundred Thousand Dollars ($5,200,000), Lee-Tyson may retain Fifty Thousand Dollars ($50,000) of the net proceeds in addition to the amount specified in Subsection IV.B.3.g.i; or

    iii.    If the sale price of the Property is at least Five Million Five Hundred Thousand Dollars ($5,500,000), Lee-Tyson may retain One Hundred Thousand Dollars ($100,000) of the net proceeds in addition to the amount specified in Subsection IV.B.3.g.i.

h.    To secure his performance under this Subsection, Lee-Tyson hereby grants to Plaintiff Federal Trade Commission a lien on and security interest in the Property in the value of Five Hundred Thousand Dollars ($500,000). Lee-Tyson represents and acknowledges that the FTC is relying on the material representations that he is the sole owner of the Property; that title to the Property is marketable; and that the Property is not encumbered by any lien, mortgage, deed of trust, assignment, pledge, security interest, or other interest except for the lien,

- 15 -

mortgage or security interest identified in the Financial Statement of Individual Defendant Lucas Lee-Tyson provided to the FTC on March 4, 2025; and

i.     Upon the request of FTC counsel, Lee-Tyson shall cooperate fully with the FTC in the perfection of its liens and security interests of the Property and be responsible for preparing, executing, and recording the necessary documents and taking other actions necessary to perfect the FTC's voluntary liens on and security interests in the Property. Lee-Tyson shall be responsible for paying all costs relating to the preparation, execution, delivery, filing, recording, and termination of the voluntary lien on and security interest in the Property. Lee-Tyson shall deliver to the FTC copies of all recording documents used to perfect the FTC's voluntary liens on and security interests in the Property within ten (10) days from the date of FTC counsel's request.

4.     Stipulating Defendants shall take the following steps to sell all interests in the 2023 Mercedes Sprinter Van (hereinafter, "the Vehicle") identified in response to Item 18 and Item 23 of the Financial Statement of Growth Cave, LLC, provided to the FTC on March 4, 2025:

a.     Stipulating Defendants shall immediately attempt to sell the Vehicle at a fair market value (based on Kelly Blue Book value);

b.     If Stipulating Defendants have not sold the Vehicle within 60 days of entry of this Order, they shall sell the

- 16 -

Vehicle at a fair market value (based on Kelly Blue Book value) by advertising it for sale through an online auction service and selling it to the highest bidder, or by placing the unsold Vehicle for sale through an appropriate broker or automobile listing service;

c.    Before accepting a bid or offer, Stipulating Defendants' counsel shall notify FTC counsel of the proposed sale price and the name, address, and telephone number of the purchaser(s) of the Vehicle;

d.    Pending sale of the Vehicle, Stipulating Defendants shall (i) maintain the Vehicle in good working order and in substantially the same condition as of March 4, 2025, the date Growth Cave, LLC provided a sworn financial statement to the FTC; (ii) take no action to encumber or diminish the value of the Vehicle; (iii) maintain existing insurance coverage for the Vehicle; and (iv) remain current on any tax, registration, maintenance costs, loans, and other fees and expenses related to the Vehicle; and

e.    Within three (3) business days of receipt of the net proceeds from the sale of the Vehicle, Stipulating Defendants shall transfer the net proceeds to the Commission by electronic fund transfer, in accordance with instructions provided by a representative of the Commission;

f.    Stipulating Defendants shall in no way profit directly or indirectly from the sale of the Vehicle, including by

sharing in any sales commission or fee, or by receiving anything of value of any kind; and

g.    Notwithstanding the requirements set out in Section IV.B.4.a–f, if FTC counsel determines that despite Stipulating Defendants' good faith cooperation the Vehicle cannot be located, which determination shall not be unreasonably withheld, Stipulating Defendants shall be relieved of any obligations to sell or auction the Vehicle.

C.    If, after six (6) months from the date of the entry of this Order, all net proceeds from the sale of the assets referenced in Subsection B have not been transferred to the FTC, Stipulating Defendants consent to the appointment of a receiver by the Court for the purpose of taking possession and control of and liquidating the unsold assets, with the rights, powers, and privileges of an equity receiver. The costs and expenses of the receivership, including reasonable compensation for the receiver and personnel retained by the receiver, shall be paid solely from the proceeds of the sale of the assets.

D.    Upon completion of all transfers and requirements described in Subsections B and C, the remainder of the judgment entered in Section IV.A is suspended as to all Stipulating Defendants, subject to Subsections E, F, and G below.

E.    The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Stipulating Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.    The Financial Statement of Individual Defendant Lucas Lee-Tyson signed on March 4, 2025, and all attachments thereto;

- 18 -

2.    The Financial Statement of Corporate Defendant Growth Cave signed on March 4, 2025, and all attachments thereto;

3.    The additional information regarding LLT Research's financials submitted by email from Stipulating Defendants' counsel to FTC counsel on March 14, 2025, and all attachments thereto;

4.    The additional documentation regarding Growth Cave lawsuits produced electronically by Stipulating Defendants' counsel to FTC counsel on March 17, 2025;

5.    The property tax and property insurance information submitted by email from Stipulating Defendants' counsel FTC counsel on March 18, 2025, and all attachments thereto;

6.    The property tax and property insurance information submitted by email from Stipulating Defendants' counsel to FTC counsel on March 31, 2025, and all attachments thereto;

7.    The Rolls-Royce sale information submitted by email from Stipulating Defendants' counsel to FTC counsel on April 2, 2025;

8.    The Rolls-Royce sale information submitted by email from Stipulating Defendants' counsel to FTC counsel on April 3, 2025;

9.    The additional information regarding net proceeds of the Rolls-Royce sale submitted by email from Stipulating Defendants' counsel to FTC counsel on April 8, 2025;

10.    The information regarding Mr. Lee-Tyson's living expenses, CapitalOne account, and Notice of Sale/or Bill of Sale for Motor Vehicle, Mobile Home, Off-Highway Vehicle or Vessel submitted by email from Stipulating Defendants' counsel to FTC counsel on April 14, 2025, and all attachments thereto;

11.    The Capital One Bank Account Summary for April 2025 produced by Stipulating Defendants' counsel to FTC counsel on May 6, 2025;

12.    The additional information regarding LLT Research's operations and Capital One Bank Account Summary for May 2025 submitted by email from Stipulating Defendants' counsel to FTC counsel on June 9, 2025, and all attachments thereto;

13.    The information regarding Stipulating Defendants' financials, including but not limited to tax liability and real property, submitted by email from Stipulating Defendants' counsel to FTC counsel on July 9, 2025, and all attachments thereto;

14.    The information regarding LLT Research's operations and Capital One Bank Account Summary for June 2025 submitted by email from Stipulating Defendants' counsel to FTC counsel on July 14, 2025, and all attachments thereto;

15.    The information regarding Lee-Tyson's Vanguard accounts and residence submitted by email from Stipulating Defendants' counsel to FTC counsel on July 31, 2025;

16.    The information regarding Lee-Tyson's Vanguard accounts submitted by email from Stipulating Defendants' counsel to FTC counsel on August 4, 2025;

17.    The information regarding Lee-Tyson's Vanguard accounts submitted by email from Stipulating Defendants' counsel to FTC counsel on August 7, 2025;

18.    The information regarding Lee-Tyson's residence submitted by email from Stipulating Defendants' counsel to FTC counsel on August 10, 2025, and all attachments thereto;

- 20 -

19.    The Capital One Bank Account Summary for July 2025 submitted by email from Stipulating Defendants' counsel to FTC counsel on August 12, 2025;

20.    The Capital One Bank Account Summary for August 2025 submitted by email from Stipulating Defendants' counsel to FTC counsel on September 8, 2025;

21.    The information regarding Stipulating Defendants' financial obligations submitted by email from Stipulating Defendants' counsel to FTC counsel on September 16, 2025; and

22.    The information regarding Stipulating Defendants' financials submitted by email from Stipulating Defendants' counsel to FTC counsel on September 24, 2025.

F.    The partial suspension of the judgment will be lifted as to the Stipulating Defendants if, upon motion by the Commission, the Court finds that Stipulating Defendants failed to disclose any material asset, materially misstated the value of any asset, made any other material misstatement or omission in the financial representations identified above, or failed to make the sales and asset transfers set out in Subsection B or C above.

G.    If the suspension of the judgment is lifted, the judgment becomes immediately due as to Stipulating Defendants in the amount specified in Section IV.A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## V.    ADDITIONAL MONETARY PROVISIONS

A.      Stipulating Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Stipulating Defendants acknowledge that any Employer Identification Number, Social Security Number, or other Taxpayer Identification Number, including all such numbers that Stipulating Defendants previously provided, may be used by the Commission for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. § 7701.

E.      All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the

- 22 -

Complaint. Any money not used for relief is to be deposited to the U.S. Treasury. Stipulating Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F.    The asset freeze set forth in the Amended Stipulated Preliminary Injunction is modified to permit the payments and asset transfers identified in the section titled Monetary Judgment. Upon completion of the payments and transfers, the asset freeze is dissolved as to the Stipulating Defendants. The asset freeze shall remain in place as to the other defendants that are not a party to this stipulation. Stipulating Defendants must fully cooperate with the Commission as to the asset freeze. Stipulating Defendants must take all steps reasonable and necessary to assist in the transfer of assets, as identified in the section titled Monetary Judgment. If requested to execute appropriate documents, such as to liquidate, transfer, or assign any frozen asset, the Stipulating Defendants must execute such documents within 3 days of a written request from a representative of the Commission or any entity holding Stipulating Defendants' assets.

## VI.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Stipulating Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the business activities alleged in the Complaint; and

C.    Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VII.    COOPERATION

**IT IS FURTHER ORDERED** that Stipulating Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Amended Complaint. Stipulating Defendants must provide truthful and complete information, evidence, and testimony. Stipulating Defendants must appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## VIII.    ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Stipulating Defendants obtain acknowledgments of receipt of this Order:

A.     Stipulating Defendants, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 10 years after entry of this Order, for any business that any Stipulating Defendant individually, or collectively with any other Defendant, is the majority owner or controls directly or indirectly, Stipulating Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of this Order and all agents and representatives who participate in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which Stipulating Defendants delivered a copy of this Order, Stipulating Defendants must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Stipulating Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Stipulating Defendant must submit a compliance report, sworn under penalty of perjury:

1.   Stipulating Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Stipulating Defendant; (b) identify all of the Stipulating Defendant's business activities, including any

- 25 -

business for which the Stipulating Defendant performs services whether as an employee or otherwise and any entity in which the Defendant has any ownership interest, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Stipulating Defendant must describe if it knows or should know due to its own involvement); (d) describe in detail Stipulating Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership; (e) describe in detail whether and how the Stipulating Defendant is in compliance with each Section of this Order; and (f) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.    For 10 years after entry of this Order, each Stipulating Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Stipulating Defendant must report any change in: (a) name, including any aliases or fictious names, (b) residential address, (c) title or role in any business activity, including any business for which the Stipulating Defendant performs services whether as an employee or otherwise and any entity in which the Stipulating Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity; (d) any designated point of contact; or (e) the structure of any entity the Stipulating Defendant has any ownership interest in or

controls directly or indirectly that may affect compliance

obligations arising under this Order, including: creation, merger,

sale, or dissolution of the entity or any subsidiary, parent, or

affiliate that engages in any acts or practices subject to this Order.

C.    Stipulating Defendants must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against any Stipulating Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Growth Cave, X250025.

## X.    RECORDKEEPING

**IT IS FURTHER ORDERED** that Stipulating Defendants must create certain records for 10 years after entry of this Order, and retain such record for 5 years. Specifically, Stipulating Defendants, for any business that a Stipulating Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, address, telephone numbers, job title or position, dates of service, and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.    A copy of each unique advertisement or other marketing material.

## XI.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Stipulating Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended:

A.    Within 14 days of receipt of a written request from a representative of the Commission, Stipulating Defendants must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions or testimony at a hearing or trial; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with Stipulating Defendants. Stipulating Defendants must permit representatives of the Commission to interview any employee or other

person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Stipulating Defendants or any individual or entity affiliated with Stipulating Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Stipulating Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XII.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

1    **SO STIPULATED AND AGREED:**

2

3    **FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

4

5    */s/ Maris K.V. Snell*                          Date: January 21, 2026
     MARIS K.V. SNELL

6    msnell@ftc.gov
     ADRIENNE JENKINS

7    ajenkins@ftc.gov

8    Federal Trade Commission
     1111 Superior Avenue, Suite 200

9    Cleveland, OH 44114

10   Tel: (202) 660-8544

11   Fax: (216) 263-3426

12   MILES D. FREEMAN

13   mfreeman@ftc.gov

14   Federal Trade Commission
     10990 Wilshire Boulevard, Suite 400

15   Los Angeles, CA 90024

16   Tel: (310) 824-4300
     Fax: (310) 824-4380

17

18

19

20

21

22

23

24

25

26

27

28

**FOR DEFENDANTS GROWTH CAVE, LLC, LLT RESEARCH LLC, AND LUCAS LEE-TYSON:**

_____        Date:  November 10, 2025

DANIEL P. KAPPES
daniel.kappes@hklaw.com
Holland & Knight LLP
560 Mission Street
Suite 1900
San Francisco, CA 94105
Tel: 415.743.6951
Fax: 415.743.6910

*Attorneys for Defendants Growth Cave, LLC,*
*LLT Research, LLC and Lucas Lee-Tyson*

_____        Date:  November 10, 2025

LUCAS LEE-TYSON

*Individually and as an officer or owner of*
*Growth Cave, LLC and LLT Research, LLC*

- 31 -